THE AMERICAN TRADING COMPANY, APELADA, *v.* MONSERRAT, APELANTE.

APELACIÓN procedente de la Corte de Distrito de Ponce.

No. 840.—Resuelto en junio 28, 1913.

HIPOTECAS—COBRO DE CRÉDITOS HIPOTECARIOS—CANCELACIÓN DE HIPOTECAS.—El
    artículo 125 de la Ley Hipotecaria se refiere al.caso de venta de fincas hipotecadas a favor de varios acreedores para satisfacer el crédito de un primer

acreedor que es preferente, y el artículo 131 de la misma ley supone que se enajena una finca que representa valor bastante para cubrir el plazo vencido que se cobra y los pendientes, y ninguno de dichos artículos es aplicable al caso en que se ejecuta plazo vencido de un crédito hipotecario habiendo otros plazos no vencidos del mismo crédito y el importe de la finca enajenada no alcanza a cubrir el importe del plazo vencido.

ID.—PRIMER ACREEDOR HIPOTECARIO.—No debe entenderse por primer acreedor hipotecario aquel cuyo crédito venza primeramente, sino aquel a cuyo favor fué inscrita primeramente en el registro de la propiedad la obligación hipotecaria, según así lo dispone el artículo 1828 del Código Civil revisado.

ID.—PLAZOS DE UNA MISMA HIPOTECA.—Los plazos de una misma hipoteca no son créditos distintos los unos respecto de los otros, sino partes de un mismo derecho hipotecario y salvo pacto en contrario no gozan entre sí de prelación alguna, aunque tengan distintos vencimientos, por ser iguales en derecho.

ID.—PLAZOS DE UNA MISMA HIPOTECA REPRESENTADOS POR PAGARÉS HIPOTECARIOS—ADJUDICACIÓN DE LAS FINCAS HIPOTECADAS EN PAGO PARCIAL DE UN PLAZO—LEGISLACIÓN APLICABLE.—Cuando se vende o adjudica una o varias fincas afectas a una hipoteca distribuída en varios plazos con distintos vencimientos, representado cada plazo por pagaré hipotecario, y el valor que se obtenga en la venta o adjudicación no sea suficiente para cubrir el importe del pagaré o plazo vencido para cuyo pago se vende o adjudica la finca, no pudiendo por tanto ser satisfechos los plazos o pagarés posteriores por vencer, el producto líquido de la venta o adjudicación deberá ser prorrateado entre todos los acreedores, entregando al dueño del plazo o pagaré vencido y que demanda judicialmente su importe la parte proporcional que le corresponda, y depositándose la parte correspondiente a los demás plazos hasta su cancelación, con arreglo al artículo 1515 de la antigua Ley de Enjuiciamiento Civil, aplicable al caso según el artículo 176 del reglamento para la ejecución de la ley hipotecaria, por cuanto ni esa ley, ni el Código de Enjuiciamiento Civil de 1904, ni la ley relativa a la manera de ejecutar las sentencias, de marzo 9, 1905, contienen precepto alguno sobre el particular.

ID.—CANCELACIÓN DE HIPOTECA AFECTANTE A VARIOS PLAZOS DE OBLIGACIÓN HIPOTECARIA—ALEGACIONES ESENCIALES DE LA DEMANDA.—En una demanda sobre cancelación de hipoteca que garantiza varios plazos de una obligación, cuando la finca hipotecada ha sido adjudicada en pago parcial de uno de los plazos quedando otros por vencer, es necesario alegar para que pueda cancelarse la totalidad de la obligación hipotecaria, que del producto de la venta de la finca vendida o adjudicada ha sido destinada a los dueños de los otros plazos la parte que en prorrateo les corresponda.

Los hechos están expresados en la opinión.

Abogados de la apelante: *Sres. Felipe Cacalduc y Edward S. Paine.*

Abogado del apelante: *Sr. Alfredo Arnaldo.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

Los hechos consignados en la demanda que originó el pre-

sente caso y que fué presentada a la Corte de Distrito del
Distrito Judicial de Ponce con fecha 10 de junio de 1911, cuya
súplica fué enmendada en 4 de diciembre siguiente, tales como
han quedado fijados después de la eliminación de algunos de
ellos mediante estipulación de las partes demandante y de-
mandada de 15 de enero de 1912, aprobada por dicha corte,
son sustancialmente los siguientes:

*Primero*. Que por escritura pública de 11 de mayo de 1900
Luis Arán y Lancy constituyó hipoteca voluntaria sobre 20
fincas de su propiedad en garantía de la suma de 130,000 pesos
provinciales que confesó adeudar a Baudilio Durán y que se
obligó a pagar a razón de 13,000 pesos provinciales en cada
día 11 de mayo de los años 1901 a 1910, ambos inclusive,
librando por el importe de cada uno de esos plazos un pagaré
a la orden del acreedor Durán.

*Segundo*. Que los pagarés números 1 y 2 fueron satisfe-
chos, cancelándose en cuanto a ellos el gravamen hipoteca-
rio que pesaba sobre algunas de las fincas mencionadas en
la escritura de constitución de hipoteca.

*Tercero*. Que el pagaré número 3 a vencer en 11 de mayo
de 1903 fué endosado primeramente por Durán a la orden
de Martín Serra y después por éste a la orden de la Ameri-
can Trading Company, la que siguió procedimientos hipo-
tecarios para su cobro contra Francisca Arán, como admi-
nistradora judicial de los bienes de Luis Arán ya fallecido,
ante la Corte de Distrito de Mayagüez en 12 de junio de 1906,
y como resultado de ese procedimiento fueron adjudicadas
a The American Trading Company seis fincas que se describen
en la demanda de las hipotecadas por Arán, por precio de
$4,830, en pago parcial de la suma que se le adeudaba de dicho
pagaré, ascendente a $6,804 de capital y $1,305.81 de intere-
ses, otorgándosele escritura de adjudicación de dichas fincas
en 20 de febrero de 1908 y entrando The American Trading
Co. en posesión de ellas.

*Cuarto*. Que el pagaré número 5 a vencer en 11 de mayo

de 1905 fué endosado por Baudilio Durán a la orden de Conrado Palau, quien extendió a continuación de dicho endoso tres más que fueron cruzados con una línea de tinta, después de los cuales extendió Palau otro endoso a la orden de Damián Monserrat Suro en Barcelona, (España) con fecha 12 de septiembre de 1910.

*Quinto*. Que tenedor Monserrat Suro del pagaré número 5, radicó demanda en la Corte de Distrito del Distrito Judicial de Mayagüez por el procedimiento sumarísimo de la Ley Hipotecaria, contra The American Trading Company, exigiéndole como dueña de las seis fincas que le fueron adjudicadas el pago del mencionado documento, que según la demanda montaba a un valor de $12,948, habiendo dispuesto dicha corte que la parte demandada fuera requerida de pago, como así se hizo en 25 de abril de 1911 por término de 30 días, que habían de vencer en 25 de mayo siguiente, en cuyo día el márshal de aquella corte embargó todas las fincas adjudicadas a The American Trading Company y también expidió edictos anunciando su venta en pública subasta para el día 22 de junio del mismo año, con el fin de satisfacer la reclamación de Monserrat.

*Sexto*. Que el embargo y anuncio de subasta de las fincas se hizo antes de vencer el plazo de los 30 días que la corte concediera a The American Trading Company para verificar el pago.

*Séptimo*. Que siguiendo por todos sus trámites el procedimiento iniciado por Monserrat, la demandante no tendrá oportunidad de defender sus derechos en buena contienda judicial, y surgiría una multiplicidad de procedimientos judiciales con Martín Serra, Conrado Palau, Sucesión Arán, Baudilio Durán y Damián Monserrat Suro, originándose grandes gastos innecesarios y pérdida de tiempo a las cortes de justicia, siendo además muy difícil precisar la cuantía de los daños y perjuicios que habrían de ocasionarse a la demandante, los que era muy probable resultaran ilusorios o irre-

parables, por cuanto Damián Monserrat Suro y la Sucesión de Luis Arán según información eran insolventes.

La demanda concluyó con súplica, que luego fué enmandada, interesando se hagan por sentencia los siguientes pronunciamientos:

*Primero*. Que es nulo en todas sus partes el procedimiento hipotecario seguido por Damián Monserrat Suro contra The American Trading Company ante la Corte de Distrito de Mayagüez, en cobro del pagaré número 5 ya expresado, y nulas por consiguiente todas las órdenes y demás actuaciones que obran en dicho procedimiento.

*Segundo*. Que no teniendo carácter hipotecario el pagaré número 5 en cuánto a las fincas adjudicadas a The American Trading Company, se ordena la cancelación con referencia a ellas en el Registro de la Propiedad de Mayagüez, de la hipoteca que lo garantizaba, constituída por escritura pública de 11 de mayo de 1900, librándose el oportuno mandamiento al Registrador de la Propiedad de Mayagüez; y por último, que se expida una orden de *injunction* preliminar previa prestación de fianza, ordenando al demando Damián Monserrat Suro, sus causahabientes y sucesores, abogados, agentes, empleados o subordinados, se abstengan desde la notificación de la orden de ejercitar o hacer ejercitar acto alguno que envuelva gravamen, anuncio de subasta por edictos, venta o remate de los bienes inmuebles de The American Trading Company de que se trata en la demanda, hasta que recaiga nueva orden de la corte disponiendo lo contrario, con costas y honorarios de abogados al demandado.

A la demanda enmendada opuso el demandado Monserrat Suro la excepción previa de que no aduce hechos suficientes para determinar una causa de acción, y la corte de Ponce por razones consignadas en opinión de 31 de enero de 1912 estimó procedía dictar resolución desestimando la demanda en cuanto a la acción de nulidad de actuaciones en ella ejercitada, por carecer dicha corte de jurisdicción para conocer de dicha

acción; y desestimando también la excepción previa general
de no aducir la demanda hechos suficientes para constituir
una causa de acción, respecto de la cancelación de hipoteca
que se pretendía en la demanda.

En cuanto a la orden de *injunction* preliminar que fué
uno de los pronunciamientos solicitados en la demanda, nada
aparece del récord, pero el juez indica en su opinión, que ha
sido objeto de consideración y resolución en otro procedi-
miento independiente.

Con fecha 6 de febrero siguiente Damián Monserrat Suro
presentó moción a la corte para que dictara sentencia de
acuerdo con las alegaciones, teniendo por renunciado el dere-
cho del demandado a contestar la demanda para poder ape-
lar de dicha sentencia, y esa sentencia fué pronunciada con
fecha 12 de febrero de 1912 desestimando la demanda pre-
sentada por The American Trading Company, en cuanto se re-
fiere a la acción de nulidad de actuaciones en ella ejercitada, y
declarando con lugar la misma demanda en cuanto a la acción
de cancelación de crédito hipotecario, decretando y ordenando
en su consecuencia la cancelación de la hipoteca constituída
en escritura otorgada ante el notario de Mayagüez Don Ma-
riano Riera Palmer en 11 de mayo de 1900, por Don Luis Arán
y Lancy a favor de Don Baudilio Durán en cuanto pueda ella
constituir un gravamen sobre las seis fincas adjudicadas a The
American Trading Company, que se describen en la demanda,
y en cuanto pueda dicha hipoteca constituir asimismo una
garantía del plazo de la misma que venció en 11 de mayo
de 1905 y que está representado por el pagaré número 5. que
se describe y copia en la demanda, endosado a favor del de-
mandado Don Damián Monserrat Suro, para lo cual se librará
mandamiento por duplicado al Registrador de la Propiedad de
Mayagüez, con las costas del litigio a cargo de la parte de-
mandada.

Contra esa sentencia interpuso recurso de apelación la re-
presentación de Monserrat y Suro en cuanto ordena la can-

celación de la hipoteca que garantiza el pagaré del demandado, correspondiente al plazo de 11 de mayo de 1905, de la hipoteca constituída por Arán a favor de Durán, por escritura ante el Notario Don Mariano Riera de Mayagüez, en 11 de mayo de 1900.

Ante esta Corte Suprema hay pendiente de consideración y resolución otro recurso de apelación interpuesto por la representación de The American Trading Company contra la misma sentencia, en cuanto desestima la demanda con relación a la acción de nulidad de actuaciones, cuyo recurso se decide en esta misma fecha.

La corte inferior funda su resolución objeto del presente recurso en los artículos 120 y 121 de la Ley Hipotecaria, mediante cuyo examen establece que la acción de The American Trading Company al dirigirse para el cobro de su crédito contra seis de las fincas hipotecadas por Arán, se ajusta perfectamente a las disposiciones de nuestro derecho hipotecario; y pasando luego a examinar los artículos 122 y 124 de la misma ley, llega a la conclusión de que habiendo pagado The American Trading Company, no con dinero contante sino con parte del crédito, motivo de la ejecución, el valor de lo que en venta produjeron las seis fincas hipotecadas, tiene derecho a que con respecto a ellas se cancele totalmente en el registro la hipoteca constituída por Arán en escritura de 11 de mayo de 1900, ya que dichas fincas no garantizan el resto del crédito cargado sobre las otras fincas.

Los artículos que se dejan citados y que la parte apelante considera infringidos por aplicación indebida, dicen así:

"Artículo 120.—Fijada en la inscripción la parte de crédito de que deba responder cada uno de los bienes hipotecados, no se podrá repetir contra ellos con perjuicio de tercero, sino por la cantidad a que respectivamente estén afectos, y la que a la misma corresponda por razón de intereses, con arreglo a lo prescrito en los anteriores artículos.

"Art. 121.—Lo dispuesto en el artículo anterior se entenderá sin perjuicio de que, si la hipoteca no alcanzare a cubrir la totalidad del

crédito pueda el acreedor repetir por la diferencia contra las demás. fincas hipotecadas que conserve el deudor en su poder; pero sin prelación en cuanto a dicha diferencia, sobre los que después de inscrita la hipoteca hayan adquirido algún derecho real en las mismas fincas.

"Art. 122.—La hipoteca subsistirá íntegra, mientras no se cancele, sobre la totalidad de los bienes hipotecados, aunque se reduzca la obligación garantizada, y sobre cualquiera parte de los mismos. bienes que se conserve, aunque la restante haya desaparecido; pero sin perjuicio de lo que se dispone en los dos siguientes artículos.

"Art. 124.—Dividida la hipoteca constituída para la seguridad de un crédito entre varias fincas y pagada la parte del mismo crédito con que estuviere gravada alguna de ellas, se podrá exigir por aquel a quien interese, la cancelación parcial de la hipoteca en cuanto a la misma finca."

El texto de los artículos transcritos demuestra por sí solo que ellos no resuelven la cuestión legal sometida a nuestra consideración, la cual no es otra sino la de si adjudicadas a The American Trading Company en pago parcial del crédito hipotecario de que eran dueños mediante endoso del pagaré a la orden No. 3 que lo representaba, ha quedado extinguido o nó el derecho hipotecario sobre esas fincas respecto del otro pagaré No. 5, cuyo cobro gestiona Don Damián Monserrat.

En nuestro sentir los artículos de la Ley Hipotecaria que pueden ser atinentes al caso son los siguientes:

"Artículo 125.—*  *  *. En los casos de que sobre una o varias fincas graviten créditos hipotecarios de varios acreedores y lleguen a venderse o adjudicarse para el pago al primer acreedor, en términos de que el valor de lo vendido o adjudicado o no iguale o no supere al crédito hipotecario que se realice, los créditos restantes se entenderán de hecho y de derecho cancelados, y se cancelarán en el registro, previa presentación del oportuno mandamiento judicial en que consten la venta o la adjudicación y sus causas, con expresión del acto que constituya la solvencia del crédito preferido, todas las inscripciones posteriores de censos e hipotecas y las anotaciones de embargo hechas también con posterioridad, dejando libres de todo gravamen por estos conceptos la finca o fincas enajenadas o adjudicadas.

"Esto se entenderá sin perjuicio de los demás derechos y acciones que los acreedores postergados puedan ejercitar contra su deudor conforme a las leyes.

"Art. 131.—Si para el pago de alguno de los plazos del capital o de los intereses fuere necesario enajenar la finca hipotecada, y aun quedaren por vencer otros plazos de la obligación, se verificará la venta y se transferirá la finca al comprador con la hipoteca correspondiente a la parte del crédito que no estuviere satisfecha, la cual, con los intereses, se deducirá del precio.

"Si el comprador no quisiere la finca con esta carga, se depositará su importe con los intereses que le correspondan, para que sea pagado el acreedor al vencimiento de los plazos pendientes."

Como se ve, el artículo 125 se refiere al caso de que se vendan o adjudiquen fincas hipotecadas a favor de varios acreedores para verificar el pago a un primer acreedor que es preferente, y el 131 ordena lo que debe hacerse cuando se enajenare una finca hipotecada para el pago de alguno de los plazos vencidos de la obligación, quedando por vencer otros plazos de la misma.   Ese artículo 131 supone que se trata de una finca que representa valor bastante para cubrir el plazo vencido y los pendientes, pues si así no fuera, nadie se arriesgaría a comprarla con perjuicio de sus intereses.   En los negocios nunca impera la idea del perjuicio.

Y no debe entenderse por primer acreedor hipotecario, aquel cuyo crédito venza primeramente, sino a cuyo favor fué inscrita primeramente en el registro la obligación hipotecaria, como lo estatuye expresamente el artículo 1828 del Código Civil, al ordenar que los créditos hipotecarios y refaccionarios anotados o inscritos en el registro de la propiedad, gozarán de prelación entre sí por el orden de antigüedad de las respectivas inscripciones o anotaciones.

No aparece de la demanda que los créditos de que son dueños The American Trading Company y Damián Monserrat consignados en pagarés a la orden, vencederos en 11 de mayo de 1903 y 1905 y provenientes de una misma escritura, fueron inscritos en distintas fechas en el registro, y antes por el

contrario, parece que debieron ser inscritos en la misma fecha en que se verificó la inscripción de la escritura.

Los plazos de una hipoteca, como alega la parte apelante, no son créditos distintos los unos respecto de los otros, sino partes de un mismo derecho hipotecario, y salvo pacto en contrario no gozan entre sí de prelación alguna por ser iguales en derecho. La inscripción es la que da la prelación, y no es cuestión a debatir que el derecho hipotecario correspondiente al pagaré de The American Trading Company fuera inscrito con anterioridad al derecho hipotecario correspondiente al pagaré de Don Damián Monserrat, ni que en la escritura de hipoteca se conviniera preferencia alguna entre ambos pagarés.

Según el artículo 79 de la Ley Hipotecaria podrá pedirse y deberá ordenarse la cancelación total de las inscripciones y anotaciones preventivas, entre otros casos cuando se extinga por completo el derecho inscrito, y según el artículo 132 del reglamento para la ejecución de dicha ley, se considerará extinguido el derecho real inscrito, entre otros casos, cuando vendida judicialmente la finca y pago el primer acreedor hipotecario no quedare residuo para aplicar a los demás créditos posteriormente inscritos, conforme a lo dispuesto en el artículo 125 de la ley.

No se trata en el presente recurso de un primer acreedor hipotecario y de créditos posteriormente inscritos. Los créditos de The American Trading Company y de Damián Monserrat Suro son iguales en derecho. Faltando como falta provisión expresa en la Ley Hipotecaria, veamos ahora cuál es la resolución que debe adoptarse cuando vendida o adjudicada una o varias fincas para el pago de un plazo vencido de una obligación hipotecaria, el valor que se obtenga en la venta o adjudicación no baste para cubrir el plazo vencido, y no puedan, por tanto, ser satisfechos en forma alguna los plazos a vencer.

El artículo 176 del Reglamento para la ejecución de la Ley

Hipotecaria prescribe que las disposiciones de la Ley de Enjuiciamiento Civil vigentes, en Cuba, Puerto Rico y Filipinas serán aplicables a los procedimientos para el cobro de créditos hipotecarios, como supletorias en cuanto no se opongan a lo prescrito en la Ley Hipotecaria y en su reglamento.

Ni en la Ley de Enjuiciamiento Civil que comenzó a regir en 1º. de julio de 1904, ni en la ley relativa a las sentencias y la manera de satisfacerlas, aprobada en marzo 9 de 1905, encontramos precepto alguno que resuelva la cuestión propuesta, pero si acudimos a la antigua Ley de Enjuiciamiento Civil, encontramos en ella el artículo 1515 que dice así:

"Artículo 1515.—Cuando se hubiere despachado la ejecución en virtud de títulos al portador con hipoteca inscrita sobre la finca vendida, si existieren otros títulos con igual derecho, se prorrateará entre todos el valor líquido de la venta entregando al ejecutante lo que le corresponda, y depositándose la parte correspondiente a los demás títulos hasta su cancelación, para lo cual podrá emplearse el procedimiento establecido en los artículos 96 y 90 respectivamente de la Ley Hipotecaria de cada una de las Islas de Cuba y de Puerto Rico."

El anterior precepto puede servirnos de guía para la resolución del presente recurso.

Comentando el ilustrado tratadista Don José María Manresa y Navarro el artículo 1517 del Código de Enjuiciamiento Civil de España, de cuyo artículo es una reproducción el 1515 de nuestra antigua ley de Enjuiciamiento Civil ya transcrito, se expresa en los siguientes términos:

"Aunque el artículo 1517 se concreta al caso expuesto de títulos al portador, por analogía habría de aplicarse su disposición a los demás casos en que existan otros acreedores con igual derecho hipotecario que el del ejecutante; si así resulta de la certificación del registrador, el valor líquido de la venta de la finca hipotecada se prorrateará entre todos entregándose al ejecutante el que le corresponda y consignando en la caja de depósitos la parte correspondiente a los otros acreedores."

Estamos conformes con la opinión del Sr. Manresa.

Ahora bien, en la demanda no se expresa la cantidad o parte de gravamen de que debía responder cada una de las 20 fincas hipotecadas por Luis Arán y Lancy para garantir el pago de los diez pagarés expedidos a favor de Durán, ni tampoco nos dice la cantidad de que debía responder cada una de las seis fincas que fueron adjudicadas a The American Trading Company en solución del pagaré número 3 de que era tenedor.   En dicho pagaré No. 3 por 13,000 pesos m. p. a cobrar en mayo 11, 1903, inserto en la demanda, consigna L. Arán, que en garantía de esa obligación y lo demás que totaliza la suma de 130,000 pesos provinciales y sus intereses al 6 por ciento anual, había hipotecado a favor de Baudilio Durán 20 fincas rústicas radicadas en el término municipal de Mayagüez, Las Marías y Cabo Rojo, según todo consta más detallado de documento hipotecario de 11 de mayo de 1900.

El contenido de dicho pagaré nos revela que las seis fincas adjudicadas a The American Trading Company en pago parcial de la obligación a que se refiere garantizaban otras obligaciones, entre éstas el pagaré No. 5 que también se inserta en la demanda, a vencer en 11 de mayo de 1905, que llegó a manos de Damián Monserrat Suro mediante endoso a su favor, habiendo dirigido éste su acción hipotecaria de cobro contra las seis fincas adjudicadas a The American Trading Company.

Fueron adjudicadas esas fincas, según revela la demanda a The American Trading Company, por precio de $4,830 en pago parcial de su crédito de $6,804 de capital y $1,305.81 de intereses, sin que se alegue que fuera prorrateada aquella cantidad entre los demás acreedores o tenedores de otros pagarés que con respecto a esas seis fincas tuvieran igual derecho hipotecario que The American Trading Company, y tal alegación era esencial y necesaria en el presente caso para que fuera procedente la cancelación solicitada.   Los hechos expuestos en la demanda no determinan causa de acción para dicha cancelación.

El estado de la legislación en Louisiana con respecto al

caso de pagarés garantizados con una sola hipoteca, era el mismo que en Puerto Rico, esto es, no existía ninguna disposición legal que directamente resolviera lo que debía hacerse cuando se vencía uno de los pagarés y vendidos los bienes hipotecados no alcanzaba el importe de la venta para pagar la totalidad de los pagarés garantizados. La Corte Suprema del Estado decidió varias veces el caso aplicando la regla de prorrateo y la Corte Suprema de los Estados Unidos confirmó la decisión de la Corte Suprema del Estado. Véase el caso de *Lovell* v. *Cragin,* 136 U. S., 130, en donde se trata la cuestión ampliamente y en donde se establece, en resumen, la siguiente doctrina: "En Louisiana el tenedor de una o más series de pagarés garantizados por una hipoteca sobre bienes inmuebles tiene derecho a participar a prorrateo en el producto líquido de la venta de los bienes hipotecados en un pleito iniciado por un tenedor de uno de los otros pagarés y puede ejercitarse la acción hipotecaria para exigir tal derecho fundado en la obligación que la ley le impone al comprador de pagar a prorrata la parte de la deuda representada por los pagarés que no fueron objeto del juicio ejecutivo hipotecario."

Por las razones expuestas entendemos que procede la revocación de la sentencia apelada en cuanto al pronunciamiento a que se refiere el presente recurso, reservándose a la demandante los derechos que puedan asistirle para obtener la cancelación pretendida en la forma que proceda, mediante el cumplimiento de los requisitos necesarios con arreglo a los principios que dejamos establecidos y preceptos legales aplicables al caso.

*Revocada en la parte relativa al recurso.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro y Aldrey.

El Juez Asociado Sr. MacLeary no tomó parte en la resolución de este caso.